**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

HAMZEH OBEID,                          :

    Petitioner,                    :

vs.                                    :        CA 08-0353-KD-C

MICHAEL B. MUKASEY, Attorney           :
General of the United States, et al.,
                                       :
    Respondents.

**REPORT AND RECOMMENDATION**

Hamzeh Obeid, a Palestinian and native and citizen of Jordan[1] ordered removed from the United States and presently being detained by the United States Immigration and Customs Enforcement ("ICE") arm of the Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[2] This matter has been referred to the undersigned for entry

---

[1] Petitioner describes himself as a native and citizen of Palestine. (Doc. 1, at 2) However, because Palestine is part of the Occupied Territories of the West Bank of Israel (*see* Doc. 11, Declaration of Jaime C. Alfaro, at ¶ 6), this Court adopts the respondents' description of petitioner's citizenship.

[2] Petitioner is in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be **GRANTED**, on the basis that the removal of petitioner from the United States is not reasonably foreseeable, and that petitioner be granted his immediate supervised release from ICE under conditions to be enumerated by ICE.

## FINDINGS OF FACT

1.  Obeid is a Palestinian and a native and citizen of Jordan who entered the United States on August 6, 1999 on a 6-month B2 visa for pleasure. (Doc. 11, Declaration of Christopher Sobolewski, at ¶¶ 3-4; *see also* Doc. 1, at 2) Obeid overstayed his visa (Doc. 1, at 2) and his June, 2003 request to change his status to lawful permanent resident was denied (Doc. 11, Sobolewski declar., at ¶ 5).

2.  Obeid has been convicted of three felony offenses since overstaying his visa. (*See* Doc. 1, Exhibit A ("Review of your criminal history reveals six known arrests that resulted in one misdemeanor and three felony convictions for offenses that include: Aggravated Assault on a Police Officer, Assault, Criminal Mischief and Sale of Fraudulent Documents.")) Petitioner admits in his complaint that, most recently, in the winter of 2007, he entered a counseled guilty plea to assault in a New Jersey state court and was

sentenced to a five-year term of probation. (Doc. 1, at 2)

3.     On April 17, 2007, Obeid was arrested and placed into ICE custody; removal proceedings were begun based upon petitioner's numerous criminal convictions and because he was an alien lacking proper documentation. (*See* Doc. 1, at 2)

4.     "On August 17, 2007, an Immigration Judge issued an order [that] Obeid be removed from the United States." (Doc. 11, Sobolewski declar., at ¶ 7; *cf.* Doc. 11, Alfaro declar., at ¶ 6 ("Mr. Obeid was ordered removed to Occupied Territories of West Bank (Israel) [] or in the alternative to Jordan from the United States by an Immigration Judge on August 1, 2007.")) Petitioner did not appeal the Immigration Judge's removal order to the Board of Immigration Appeals. (Doc. 11, Sobolewski declar., at ¶ 7)

5.     On more than one occasion since September of 2007, ICE has contacted the Jordanian Embassy in the United States to obtain travel documents for Obeid so that petitioner can return to Jordan. (Doc. 11, Alfaro declar., at ¶¶ 7-13) Jaime Alfaro, a Detention and Deportation Officer in the Travel Document Unit of ICE, does not identify in his declaration at what point during the period between March 31, 2008 and July 7, 2008 someone in the Jordanian Embassy contacted his unit with the information that it was

3

"ready to issue a travel document" and that same would "be sent via DHL." (*See id.* at ¶¶ 10-12) To date, of course, no travel document has been forthcoming from the Jordanian Embassy. (*See id.* at ¶¶ 12-13)[3]

      6.      On November 20, 2007, ICE reviewed petitioner's custody status and determined that his detention should continue. (Doc. 1, Exhibit A)

> This letter is to inform you that your custody status has been reviewed and it has been determined that you will not be released from the custody of US Immigration and Customs Enforcement (ICE) at this time. This decision has been made based upon a review of your file and/or your personal interview and in consideration of any information you submitted to the reviewing officials.
>
> Review of your criminal history reveals six known arrests that resulted in one misdemeanor and three felony convictions for offenses that include: Aggravated Assault on a Police Officer, Assault, Criminal Mischief and Sale of Fraudulent Documents. It is noted that your first known arrest occurred when you were not yet 16 years old and you were then arrested six times within five years. The nature and scope of your criminal history clearly suggests that you would pose a significant danger to the community if you were released from ICE custody. You do not appear to meet the criteria for release as set forth in 8 CFR 241.4. Therefore, you will not be released from ICE custody at this time.
>
> You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal

---

[3]     Apparently because of foot-dragging by the Jordanian Embassy, Alfaro "directed Field TDU to send a travel document package request to Israel on July 30, 2008 with documentation of his birth in Israel." (*Id.* at ¶ 14)

>       and that you are cooperating with the ICE efforts to remove you
>       by taking whatever lawful actions the ICE requests to affect
>       your removal. You are also advised that any willful failure or
>       refusal on your part to make timely application in good faith for
>       travel or other documents necessary for your departure, or any
>       conspiracy or actions to prevent your removal or obstruct the
>       issuance of a travel document, may subject you to criminal
>       prosecution under 8 USC Section 1253(a).
>
>       If you have not been removed from the United States or
>       released from ICE custody by 02/01/2008, your case will be
>       referred to the Headquarters Custody Determination Unit
>       (HQCDU), 800 K St. N.W., Washington, DC 20536. HQCDU
>       will make a final determination regarding your custody status.[4]

(*Id.* (footnote added))

      7.      Obeid has not only cooperated with ICE to effectuate his removal from this country (*see* Doc. 11, Alvaro declar., at ¶ 7 ("Mr. Obeid was required to assist the field office in acquiring a travel document. He produced all his documentation, including a Jordanian passport, to acquire a travel document to Jordan and it was presented to the Jordan[ian] consulate on September 6, 2007.")), but, as well, has sought asylum, albeit unsuccessfully, in both Israel and Germany (Doc. 1, Exhibits B & C).

      8.      Obeid filed his petition seeking habeas corpus relief, pursuant to 28 U.S.C. § 2241, in this Court on June 19, 2008 (Doc. 1), some fourteen (14)

---

[4]     There is nothing in the record to indicate that the HQCDU made a final determination regarding Obeid's custody status on or after February 1, 2008.

5

months after being taking into ICE custody.

## **CONCLUSIONS OF LAW**

1.  In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2.  In *Zadvydas*, the Supreme Court held that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3.  8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a)  Detention, release, and removal of aliens ordered removed**

   **(1)  Removal period**

      **(A)  In general**

      Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

### **(B) Beginning of period**

The removal period begins on the **latest** of the following:

**(i)** The date the order of removal becomes administratively final.

**(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

**(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

### **(C) Suspension of period**

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

### **(2) Detention**

During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id.* (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable

future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

    4.    In this case, the federal respondents implicitly concede, as they must, that the presumptively reasonable six-month detention period has long since passed. (*See* Doc. 11, at 4 ("The Court of Appeals has held that *Zadvydas* does not set out a *per se* rule that mandates an alien's release after six months.")) Obeid's six-month presumably reasonable removal period began on September 17, 2007, the date the order of removal became administratively final, *compare* 8 C.F.R. § 1241.1(c) (2007) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final: . . . [u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time[.]") *with* 8 C.F.R. § 1003.38(b) ("The Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge [] shall be filed directly with the Board of Immigration Appeals within 30 calendar days after the stating of an Immigration Judge's oral decision or the mailing of an Immigration Judge's written decision."), and expired on or about March 17, 2008. Approximately three months elapsed between the end of petitioner's presumptively-reasonable

detention period and the filing of the instant habeas corpus petition and another two and one-half (2½) months has elapsed since the filing of the petition with the federal respondents unable to make any realistic prediction when Obeid will be repatriated to his native Jordan (or Israel) (*see* Doc. 11, Alfaro declar., at ¶¶ 10-15 ("On March 31, 2008, Field TDU contacted the [Jordanian] Embassy by telephone, but was unable to leave a voice message because the voice mailbox was full. The Embassy contacted Field TDU to indicate that it is ready to issue a travel document and that it will be sent via DHL. As of July 7, 2008, the travel document was still pending per the Embassy. On July 30, 2008, additional information was also sent to the Jordanian Consulate to finalize the travel document and Jordan gave no indication that a travel document would not be forthcoming. In the alternative, I directed Field TDU to send a travel document package request to Israel on July 30, 2008 with documentation of his birth in Israel. It is my experience that Israel requires approximately six months to review the travel document package and issue a travel document.")). Accordingly, Obeid has been in ICE custody now for some sixteen (16) months since April 17, 2007, twelve and one-half of which he has endured since being ordered removed to his native Jordan (or Israel).

    5.    In *Zadvydas, supra*, the Supreme Court indicated that "[a]fter

this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701, 121 S.Ct. at 2505; *see also id.* at 699-700, 121 S.Ct. at 2405 ("[T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

      6.      The undersigned concludes that Obeid has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner has now been detained by ICE awaiting removal for over 16 months (twelve and one-half of which has elapsed since the Immigration Judge ordered his removal)--well in excess of the six-month presumptively reasonable period--with no assurance received from either the Jordanian Embassy (or the Israeli Embassy) in Washington,

D.C. that a travel document is forthcoming. *See Seretse-Khama v. Ashcroft*, 215 F.Supp.2d 37, 48 (D. D.C. 2002) ("Based on this record of the continued detention of petitioner awaiting removal for well over three years (far in excess of the six-month presumptively reasonable period), with no success by the INS (and arguably little effort) in obtaining travel documents, the Court concludes that petitioner has met his burden of showing 'good reason to believe that there is no *significant likelihood* of removal in the reasonably foreseeable future.'")). For its part, ICE has not provided sufficient evidence to rebut Obeid's showing. The August 14, 2008 declaration statement of Jaime Alfaro that Obeid will be removed to Jordan (or Israel) once a travel document is finalized, as well as the similar declaration statement from Christopher Sobolewski[5] on August 21, 2008 (Doc. 11, Sobolewski declar., at ¶ 12 ("As recently as July 2008 contact[s] [with] Jordanian Consulate officials have indicated that travel documents are pending to secure Obeid's removal.")), do nothing but underscore petitioner's showing that there is no significant likelihood of his removal in the reasonably foreseeable future given that ICE officials, with petitioner's assistance, have been trying to obtain a travel document from the Jordanian Embassy for almost one year (Doc. 11, Alfaro

---

[5] Sobolewski is a Deportation Officer for ICE. (Doc. 11, Sobolewski declar., at ¶ 1)

declar., at ¶ 7 ("Mr. Obeid was required to assist the field office in acquiring a travel document. He produced all his documentation, including a Jordanian passport, to acquire a travel document to Jordan and it was presented to the Jordan[ian] consulate on September 6, 2007.")) and have recently shifted gears to try to obtain a travel document from Israel (Doc. 11, Alvaro declar., at ¶¶ 14 & 15 ("In the alternative, I directed Field TDU to send a travel document package request to Israel on July 30, 2008 with documentation of his birth in Israel.[6] It has been my experience that Israel requires approximately six months to review the travel document package and issue a travel document."). *See Andreasyan v. Gonzales*, 446 F.Supp.2d 1186, 1189 (W.D. Wash. 2006) ("Petitioner has now been detained for more than eight months since his order of removal became final on November 17, 2005. Given the time that has passed since the R & R without the production of travel documents, and given that six weeks have passed since Respondents' last request for a 'few more weeks,' this Court now finds that the Government has not responded with enough evidence to rebut Petitioner's claim that removal is not likely in the reasonably foreseeable future.").

      7.     It is clear to the undersigned not only that there is no significant

---

[6] Perhaps the Jordanian Embassy's hesitancy in issuing a travel document has something to do with the fact that Obeid was born in Israel.

13

likelihood of Obeid's removal in the reasonably foreseeable future but, as well, that his continued detention does not meet the purposes of the statute. As recognized in *Zadvydas, supra*, the purposes of the statute are ensuring the alien's presence at the moment of removal and preventing danger to the community. *See* 533 U.S. at 690, 121 S.Ct. at 2499 (citation omitted). The respondents have parenthetically argued that "[p]etitioner's most recent arrest and his failure to report while on supervised release with ICE,[7] establish both a reason to doubt that he will voluntarily present himself for removal and a reason to believe that he presents a risk to the community of further criminal activity." (Doc. 11, at 3 n.1 (footnote added); *see id*. at 3 & 4, n.2 ("Petitioner's prior felony convictions in New Jersey and the fact that these convictions occurred while he overstayed as a visitor in the United States are reason to doubt that he will voluntarily present himself for removal and reason to believe that he presents a risk to the community of further criminal activity."))

> But by definition the first justification-preventing flight-is weak
> or nonexistent where removal seems a remote possibility at best.
> As this Court said in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct.
> 1845, 32 L.Ed.2d 435 (1972), where detention's goal is no
> longer practically attainable, detention no longer "bear[s] [a]

---

[7] The respondents have offered absolutely no evidence that petitioner has ever been on supervised release with ICE, much less that he failed to report.

> reasonable relation to the purpose for which the individual [was] committed." *Id*., at 738, 92 S.Ct., at 1845.
>
> The second justification-protecting the community-does not necessarily diminish in force over time. But we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections. . . . In cases in which preventive detention is of potentially *indefinite* duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger.

533 U.S. at 690-691, 121 S.Ct. at 2499.

8.   Given the risk-of-flight analysis by the Supreme Court in *Zadvydas*, the argument made by the federal respondents in this case is adequately countered by the undersigned's earlier determination that petitioner's removal from this country is not reasonably foreseeable.

9.   Relevant to the respondents' argument that petitioner represents a danger to the community, the Supreme Court indicated in *Zadvydas* that "once the flight risk justification evaporates, the only special circumstance present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." 533 U.S. at 691-692, 121 S.Ct. at 2499 (citations omitted). While petitioner's most recent arrest for assault does constitute a crime of violence, that the State of New Jersey chose to punish him with a term of probation, rather than a term of imprisonment, and release him into the

15

community speaks volumes against a finding that he is a specially dangerous person. Moreover, there is no evidence of any attendant special circumstance in this case, such as mental illness or a volitional impairment. Accordingly, the respondents' danger-to-the-community argument need be rejected.

      10.    In light of the foregoing, the undersigned recommends that this Court release petitioner from custody, subject to reasonable conditions ICE deems necessary to ensure Obeid's appearance and return--including those set forth in 8 C.F.R. § 241.5(a)--pending the issuance of a travel document by the Jordanian Embassy (or the Israeli Embassy) to effectuate his removal to his native country. *See Zadvydas, supra*, 533 U.S. at 700, 121 S.Ct. at 2504 ("[T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.").

## CONCLUSION

It is recommended that this Court grant Hamzeh Obeid's habeas corpus petition filed pursuant to 28 U.S.C. § 2241 and order his immediate supervised release under conditions set forth by the ICE arm of the Department of Homeland Security.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 2nd day of September, 2008.

     s/WILLIAM E. CASSADY
     **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.     *Objection*. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*. Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

　　　　　　　　　　　　　　　　　　　　_S/WILLIAM E. CASSADY_____
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE